Walter Leroy **SHEPHERD**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 14105.

United States Court of Appeals, Ninth Circuit.

Dec. 13, 1954.

John H. Brill, San Francisco, Cal., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Lloyd H. Burke, U. S. Atty., Donald B. Constine, Richard H. Foster, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before STEPHENS, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

The appellant, who was classified by the appropriate Selective Service Board as available for induction under the provisions of Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq., refused to submit to induction as required by that Act and in consequence was indicted and convicted of such refusal. Upon this appeal he asserts that the action of the Board in so classifying him was so illegal, arbitrary and capricious as to make his classification void and that in consequence he cannot be guilty of the offense charged.

Upon examining Shepherd's Selective Service questionnaire and the special form for conscientious objector that he had filed, the local board placed him in Class I-A thus making him liable for unlimited military service. Upon his receipt of notice of this classification he requested a personal appearance before the board and that was granted him. Upon this appearance he renewed his claim of exemption as a conscientious objector.[1]

1. This personal appearance was on May 13, 1952. He referred to his desired classification as Class IV-E, although the board then advised that such class had been changed to I-O. The local board summary of what was said in respect to his claimed classification is as follows: "Mr. Shepherd then started reading Scripture from the Bible, after he had read a few passages, the Chairman said that they didn't care to

The board declined to change his classification and he appealed to the appeal board. His file was submitted to the Department of Justice for an investigation, hearing and recommendation. Under date of March 10, 1953, the Department of Justice by its special assistant to the Attorney General made a recommendation to the appeal board reciting that Shepherd had had a hearing before a hearing officer and, referring to what were evidently matters appearing in the investigative report furnished to the hearing officer, stated that some favorable and some less favorable reports had been procured respecting registrant's sincerity in claiming to be a conscientious objector. The report then proceeded as follows:

"The Hearing Officer was of the opinion that one of the registrant's motivating purposes in the practice of his religion is refraining from military service and recommended denial of the claim.

"Even if it is concluded that the registrant is a sincere Jehovah's Witness, he is nevertheless not entitled to exemption as a conscientious objector because the published position of the sect, (see "Why Jehovah's Witnesses Are Not Pacifists", the Watchtower, February 1, 1951) and the beliefs expressed by the registrant in his SSS Form No. 150 do not include opposition to war in any form within the meaning of the Act. The registrant stated that the Bible permits him to fight or even kill in limited circumstances. He indicates that he is not a pacifist and that he will fight whenever he considers God commands him to do so. He also admits he will fight to defend his ministry, his brother Jehovah's Witnesses, his life and property.

"After consideration of the entire file and record, the Department of Justice finds that the registrant's objections to combatant and noncombatant service are not sustained. It is, therefore, recommended to your Board that registrant's claim for exemption from both combatant and noncombatant training and service be not sustained."

Thereafter and on March 30, 1953, the appeal board placed the registrant in Class I-A.

It is argued that the appeal board had no basis in fact for a denial of a classification exempting Shepherd as a conscientious objector. In particular, it is urged that the recommendation of the Department of Justice which stated in effect that registrant was not entitled to the claimed exemption regardless of whether he was or was not a sincere Jehovah's Witness, was wrong as a matter of law. This contention refers to the paragraphs above quoted which allude to the registrant's statement that the Bible permits him to fight or even kill in limited circumstances and that he will fight whenever he considers God commands him to do so. It will be noted that the Department of Justice advised the appeal board that this position of Shepherd disclosed that his beliefs did not include opposition to war in any form within the meaning of the Act.[2]

---

hear any more. If he would state in his own words what his reasons were for a change in classification they would be glad to listen to him. He replied that he wanted a IV-E classification. He was again advised that the IV-E classification was abolished, the classification was I-O or if he was an ordained Minister or Clergyman and serving a reasonable number of People then he could be considered for a classification of IV-D. Mr. Shepherd replied that he did not want a I-O classification and that he did not qualify as a Minister, as there were certain requirements and he did not meet them. He again started reading from the Bible. He was told by the Board Members that he had a very wonderful book to read from, but you haven't convinced us you are qualified for anything but I-A."

2. It is apparent that the paragraph quoted referred to the following statements made by Shepherd in his special form for conscientious objector. "The Bible permits me to fight or even kill in limited circumstances. I am not a pacifist, because

In its decision in Hinkle v. United States, 9 Cir., 1954, 216 F.2d 8, this court held, following decisions in other circuits, that a belief in a right of self defense or in the righteousness of theocratic wars, did not necessarily negative a conscientious objection. We are of the opinion that here the statements made by the registrant to which the Department of Justice letter referred, were in substance no different than those made by Hinkle in the case cited. It follows that the advice thus given by the Department of Justice to the appeal board was in error just as we held in regard to Hinkle.

However, this case differs in an important particular from the Hinkle case where we pointed out that there was no suggestion of any sham or fakery on the part of Hinkle whose beliefs and views were admittedly sincere and genuine. Here it is to be noted the Department's recommendation of a denial of exemption was based upon a disbelief in Shepherd's honesty and sincerity as well as upon the legal conclusions that he could not be a conscientious objector because of his belief in self defense and in theocratic war.

The board was not bound to follow the recommendation of the Department of Justice under the applicable regulation Title 32, § 1626.25(c). The appeal board had before it the registrant's file disclosing that he had a personal appearance and hearing before the local board. The appeal board knew that following that appearance the local board denied the claim of exemption. In White v. United States, 9 Cir., 1954, 215 F.2d 782, we pointed out that in the determination of a registrant's beliefs and his sincerity therein, the best evidence on the question may well be his credibility and demeanor in a personal appearance before the board. In that case we noted the propriety of the appeal board taking into consideration the fact that the local board had made a classification following its opportunity to observe the registrant's demeanor during his personal appearance.

We recognize the possibility that the appeal board's action here may have been prompted solely by a consideration of the matters last referred to and that the appeal board may have disregarded the Department's recommendation, or at any rate, that portion thereof containing the erroneous statement to which we have alluded. On the other hand, we cannot close our eyes to the strong probability that the appeal board, no doubt composed of laymen, would be much influenced by such a statement of the Department of Justice recommending that even if the registrant was sincere he could not be exempted because of his expressed beliefs relating to self defense and theocratic wars.

United States v. Hagaman, 3 Cir., 213 F.2d 86, furnishes an illustration of the difficulty which a court in our position may have in dealing with a record which

---

when God commands me to fight, I will. I will fight to defend my ministry and my brothers, who do 'The will of my father who is in heaven.' (Matt 12:50) I am supported in this by the fact that Abraham fought to rescue his son Lot, (Genesis 14) and Nehemiah and his brothers fought to defend Jerusalem when they were rebuilding the walls.

"God's law permits me to use force to defend my own life. (See the enclosed Watchtower magazine of February 1, 1951, under Titles, 'Pacifism and Conscientious Objector—Is there a difference?', page 73, paragraph 2, through page 75, paragraph 8). I can defend my life by the use of force as much as necessary to ward off an attack against my self and of my brothers. The law of the land says that I can use force to an extent as to injure an attacker. Such injury might result in the death of an attacker. I can defend my self when a retreat would be dangerous.

"I can defend my home against assault. If in the defense of my home, I strike an invader under cover of night, and he dies of injuries, I have not violated God law. It says at Exodus 22:2, 3, 'If the thief is caught in the act of breaking in, and is struck a fatal blow, there is no guilt of blood in his case; if the sun has risen on him, then there is guilt of blood.'

"These are the only circumstances when God's law permits the use of force, and these are the only circumstances that I believe in, that I am entitled to the use of force."

makes it difficult to determine whether the Selective Service Board denied a claim for exemption because of some erroneous view of the law or because of a simple disbelief of registrant's convictions or sincerity in his conscientious objection claim.[3] In that case the court concluded that the denial of the claimed exemption was grounded upon a mistaken legal theory rather than a disbelief in the registrant's professions, and the judgment of conviction was reversed. In like manner in Hinkle v. United States, supra, this court found upon that record that the action of the board was based upon an erroneous view of the law and not upon any disbelief in the honesty and sincerity of the registrant.

■ We do not overlook the usual presumption that official action has been regularly performed. While it might be argued that in the absence of evidence one way or the other we must presume that the appeal board here disregarded the erroneous advice of the Department of Justice and relied exclusively upon the implied findings of the local board, that the registrant had failed to convince them of the genuineness of his religious convictions or of his sincerity, we find it difficult to be persuaded in this, a criminal case, that such a presumption is sufficient to negative the likelihood that the board in fact relied upon the erroneous advice of the Department of Justice.

Recently in Sterrett v. United States, 9 Cir., 1954, 216 F.2d 659, we held that the denial to a registrant entitled thereto of a Department of Justice hearing, rendered his classification void, and this notwithstanding the board was not obliged to accept the Department recommendation. Here Shepherd had his hearing before the Department, but the special assistant's letter, quoted above, discloses that the recommendations resulting proceeded upon an inadmissible hypothesis. We think that a hearing before a Department proceeding upon an erroneous theory as to what constitutes opposition to " 'participation in war in any form' ", is no better than no hearing at all.[4]

We hold, therefore, that the judgment must be reversed.

---

3. At page 89: "We find just two possibilities. The board may have thought that as a matter of law the showing made did not meet the statutory requirements for classification as a conscientious objector. Or it may have disbelieved the registrant's testimony as to his convictions about participation in war."

4. In United States v. Hagaman, supra, at page 89, the court commented upon the "whole series of rather similar cases" which seemed to represent "a consistent administrative application of this understandable, if mistaken, legal theory."