**UNITED STATES of America**

v.

**Michael MIECZKOWSKI.**

**Crim. No. 70–475.**

United States District Court,
E. D. Pennsylvania.

Feb. 19, 1971.

Louis C. Bechtle, U. S. Atty., Richard Galli, Philadelphia, Pa., for plaintiff.

Richard A. Axelrod, Philadelphia, Pa., for defendant.

### OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This is a selective service case. It comes before us on the government's motion to remand the matter to the defendant's local draft board for a statement of reasons for its refusal to reopen defendant's classification, in accordance with the decision in Scott v. Commanding Officer (Volatile) 431 F.2d 1132 (3d Cir. 1970). The following facts, as set forth in the Motion and Briefs, are undisputed:

Defendant is a registrant of Local Board No. 334 in Bristol, Pennsylvania. By virtue of an Order dated November 18, 1969, he was directed to report for induction into the Armed Forces on December 8, 1969, at 6:00 A.M. On the day set for induction, defendant appeared at the office of the local board with a letter which: (1) stated that he was a Conscientious Objector; and (2) requested a postponement of his induction so that the local board could review his case. This request was denied and defendant was directed by the secretary of the local board to proceed to the Armed Forces Induction Station for processing for induction. Defendant complied with that directive, but at the time he was ordered to step forward, symbolizing induction, refused to do so, stating that he was a Conscientious Objector.

Two days after his refusal of induction, defendant was mailed Form 150,

the special Conscientious Objectors' form, by his local board. It carried an instruction that it was to be completed and returned within 30 days. He returned the form to the local board on January 9, 1970, along with five letters of support.

The local board responded by directing defendant to meet with it on February 11, 1970. After this meeting, the board, by a vote of 4 to 1, refused to reopen defendant's classification. The file fails to show why the local board refused to reopen. On August 19, 1970, defendant was indicted by the Grand Jury for failing to perform a duty required by the Selective Service Act, as amended, 50 App.U.S.C. § 462.

On September 15, 1970, the United States Court of Appeals for the Third Circuit filed an Opinion in the case of Scott v. Commanding Officer (Volatile), supra ("Scott"). Scott held, inter alia, that, where a registrant's claim for conscientious objection, made after an order to report for induction has been issued, is prima facie valid, and where the local board fails to state reasons for its refusal to reopen his classification, i. e., "whether it has found the registrant incredible or insincere, or of bad faith and why", a consequent order for induction is invalid. For reasons which will appear below, it is necessary to observe that Scott expressly adopted the rule theretofore announced by the Fourth Circuit in United States v. Broyles, 423 F.2d 1299 (1970).

Defendant was arraigned on January 29, 1971 and entered a plea of not guilty. The government, apparently fearful that Scott will prevent a conviction upon the present record, has filed the pre-trial motion to remand the matter to the local board for a statement of reasons for refusal to reopen classification. Resolution of the attendant issues requires at the outset a construction of Scott, upon which, in a certain sense, both the government and the defendant rely.

The position of the government is that the Scott decision requires that the matter be remanded to the local board so as to clarify the record by a statement of its reasons for refusing to reopen defendant's classification. In support of this position, the government asserts that: (1) since, at the time of the meeting and decision of the local board, there were no Third Circuit decisions requiring a statement of reasons for refusal to reopen the classification, the decision of the board, both at the time of decision and, indeed, at the date of indictment (August 19th), fully met the necessary requirements; (2) defendant will not be prejudiced by remand, since the board would only be stating a "previously held reason for its decision"; and (3) the delay involved would be minimal and would not infringe upon defendant's right to a speedy trial.

In seeking remand, the government acknowledges its reliance upon the concurring opinion in Scott of Judge Aldisert, 431 F.2d pp. 1138–1139, and particularly Judge Aldisert's statement that:

"I agree that this circuit should adopt the Broyles rule, but I do not believe its application should threaten previous determinations by local boards in the three states and the territory of this circuit. * * * Because of the effect such a rule would have on the administration of justice, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1966), I would remand to the district court all appropriate cases heretofore processed for further remand to the local boards to afford the boards the opportunity of explaining rejections of requests for reopenings in these cases. For cases arising hereafter, I would accept the majority's procedure whereby the legality of the induction order is tested solely by the facts presented in the registrant's selective service file."

The position of the defendant is that the holding of Scott forecloses the possibility of remand. This contention stems in part from the frequent citation by Judge Seitz, speaking for the majority, of the decision of the United States Court of Appeals for the Second Circuit in the case of Paszel v. Laird, 426 F.2d 1169 (1970). In Paszel, the Second Cir-

cuit, which has, like the Third Circuit, adopted the *Broyles* rule, permitted the curing of *Scott-Broyles* error in ancillary or remanded proceedings. The defendant argues that the Third Circuit's granting of the writ in *Scott*, after citing *Paszel*, and in the face of Judge Aldisert's suggestions about remanding cases "heretofore processed" to the local board for a statement of reasons, constitutes a rejection of remand procedure.

*Paszel*, like *Scott*, arose on habeas corpus. It was an appeal by the government from the issuance of a writ to inductee, who had advanced the claim that conscientious objection had crystallized after the receipt of an order to report for induction. Commenting upon the narrowness of the scope of review of the actions of selective service boards, and the consequent necessity that the court know the reasons upon which the board acted, the court remanded the matter to the district court (which had not passed upon whether the board had a basis in fact for its finding, but only that Paszel had presented a prima facie case) for a hearing at which the board members would have an opportunity to explain the grounds for their rejection of Paszel's request to reopen.[1]

United States v. Deere, 428 F.2d 1119 is a similar Second Circuit case, decided January 6, 1970, of which the *Scott* Court, while it did not cite it, might have been aware. *Deere* arose in connection with criminal proceedings. There, the Court of Appeals directed the district judge to conduct a post-conviction hearing, a proceeding ancillary to trial, so to speak, to elicit testimony from the local board members as to their reasons for refusal to reopen. The conviction would stand or fall, therefore, on the results of that hearing.

*Scott*, of course, arose on final hearing at which the court could review the defendant's entire selective service file, unlike the present matter which comes before the court on interlocutory motion.[2] *Scott* creates, rather than resolves, the questions involved in this case. In fact, we can find no case on point, and this case may well be one of first impression. However, what the *Scott* court did *not* do enables us to draw some conclusions, for it would seem that the *Scott* court at least had the option of ordering some form of curative proceeding or remand to the local board for a statement of reasons in lieu of granting the writ of habeas corpus and discharging Scott from custody. It had the Second Circuit precedent for so doing and Judge Aldisert's discussion of remand before it. Instead, as we have noted, the *Scott* court chose to grant the writ. It is as though the *Scott* court, in essence, construed the induction order to be void ab initio, beyond possibility of resurrection. Thus, we read *Scott*, as does defendant, to foreclose remand.[3]

---

1. It seems that the question of calling draft board members to testify as to reasons for their actions in district court proceedings is at least open in this circuit. In the case of United States v. Brown, 436 F.2d 1317, filed January 15, 1971, the Third Circuit observed that it had no doubt that local board members were subject to subpoena power, the scope of examination to be "determined by the district court in accordance with proper evidentiary principles". But the question raised on subpoena power was with respect to the matter of the alleged prejudice of the chairman of the local board against Brown's religion. Moreover, the case was decided on other grounds and, therefore, sheds little light on the question involved here.

2. It would appear that the *Scott* court would not have invalidated the induction order had it not first found that (1) the registrant's file made out a prima facie case for Conscientious Objector status; (2) there was nothing in his file to indicate that Scott's asserted beliefs were not sincerely held; and (3) the file indicated that Scott's beliefs crystallized after the induction order. Not having the file, we cannot determine whether there is a prima facie case or anticipate what trial evidence the parties will introduce. Neither, however, can we avoid determining this interlocutory motion.

3. It will be noted that we do not rest this opinion upon any notion as to the "retroactivity" of *Scott*. We are not at all sure

We do not, however, rest on this argument alone; in addition thereto, we observe the following:

FIRST. Judge Aldisert's statement that he would remand to the local boards all appropriate cases "heretofore processed" for statements of reasons does not necessarily support the government's position. The trial in this case is yet to begin, and it can be argued, the Court believes, with equal, or, in fact, greater force, that this is a "case arising hereafter" which Judge Aldisert, and, a fortiori, the rest of the Court,[4] would test "solely by the facts presented in the registrant's selective service file.

SECOND. The government's position raises the anomalous prospect of proceeding to trial upon a set of facts which, as the result of remand, may be different from those which were before the grand jury and which resulted in the indictment. This strikes the Court as being unseemly in a criminal proceeding.

THIRD. We are concerned with the fundamental fairness of a remand to the local board while an (unchallenged) indictment is still pending. The pendency of the indictment might well color the local board's deliberations unfavorably to the defendant.

FOURTH. There is a realistic possibility that the local board members will have no independent recollection of a given file, and might, therefore, request to meet with the registrant. Since the indictment would be outstanding, under the rule of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), counsel would presumably have a

---

that that concept is meaningful here for the reason that this action is still in process. One can talk about retroactivity more sharply in the context of whether a completed proceeding is affected by a newly announced rule. On the other hand, it is true that the decision of the local board was reached prior to *Scott* and that this Court is applying the *Scott* standard to the proceedings which stem from that local board decision. It could be argued, therefore, that we are applying *Scott* retroactively.

Because we have decided this case on narrower grounds, we need not decide the retroactivity question. Some exegesis as to the anatomy of the question might, however, be helpful to the understanding of this case. In fact, we feel that any opinion in the matter should contain at least some reference to the subject of retroactivity, since one thinks of it so readily in this context.

The ultimate decision in the case depends, of course, upon review of a local board finding at the time of trial. The reliability of the fact finding process of the local board will then be in question. Defendant asserts that the one judicially favored purpose which has uniformly been considered to be fulfilled by retroactive application of legal principles is: "preservation of the integrity or reliability of the fact finding process." [United States ex rel. Allison v. New Jersey, 418 F.2d 332, 336 (3d Cir. 1969)].

Thus, he points out that retroactivity has been granted on the issues of right to counsel at trial [Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 81, 11 L.Ed.2d 41 (1963)], pretrial proceedings [White v. Maryland, 373 U.S. 259, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)], revocation of parole hearings [McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed. 2d 2 (1968)], and other critical stages of a criminal proceeding. In addition, he contends that retroactivity has also been the rule in other areas that tend to make judicial fact finding unreliable, such as extrajudicial confessions of co-defendants [Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968)] or use of prior testimony by an absent witness [Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969)].

The requirement set forth in *Scott* that the local board state reasons for refusal to reopen classification, may well be construed by the courts to be a proper safeguard to insure the reliability of the ultimate fact finding decision. Since the reliability of the local board's fact finding is central, the courts might, in a proper case, come to the view that *Scott* will have to be applied retroactively. The government, in its virtual concession that it cannot successfully try the case on the present state of the record, and its consequent motion for remand, seems to be in accord with defendant's view as to the possible retroactivity of *Scott* in this situation.

4. Judges Seitz and Latchum do not actually discuss this point.

right to be present. This would create difficulty, since Selective Service regulations preclude attorneys from appearing before local draft boards [32 CFR § 1624.1(b)].

FIFTH. Our attention is called to the case of Rochford v. Volatile, 317 F.Supp. 1219 (E.D.Pa.1970), where Judge C. William Kraft refused to order remand where a State and National headquarters appeal board had usurped the power of a local board to make a decision, and to the case of United States v. Carroll, 398 F.2d 651 (3d Cir. 1968), where a remand was not ordered despite the fact that an erroneous standard had been applied in ruling on a conscientious objector claim.

To recapitulate:

(1) We construe *Scott* to foreclose remand.

(2) There appear to be a number of additional positive reasons, just recited, why remand should not be granted; and

(3) Neither the Court nor counsel have been able to find any case where the procedure requested by the government has been followed.

Our refusal of the government's motion puts the government in a position of either moving to dismiss the indictment or proceeding to trial, even though it fears that, upon the present record, *Scott* will prevent a conviction. Is the government remediless? If *Scott* were to invalidate an order for induction, there is nothing to prevent commencement of the proceedings before the local board de novo; i. e., the board could reopen the defendant's classification, hold the necessary hearing, and make a determination as to whether his classification should be changed. In the wake of *Scott*, the board would, of course, have to state its reasons if it refused to change his classification. But if defendant were ordered to report for induction and refused to step forward, the government could then prosecute him. These would be totally new proceedings and the double jeopardy rule would not apply. Obviously, if the board were to change defendant's classification, that would be the end of the matter.

The Motion of the government to remand the proceedings to the local board for a statement of its reasons for refusing to reopen defendant's classification is denied.